IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jimmie Sutton, *aka Jimmie Archibald Sutton*, | ) | C/A No. 0:10-2326-MBS-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden John Owen, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The plaintiff, Jimmie Sutton ("Sutton"), a self-represented federal prisoner currently housed at FCI-Edgefield of the Federal Bureau of Prisons ("BOP"), filed this habeas corpus action pursuant to 28 U.S.C. § 2241, alleging that BOP has erroneously calculated his sentence. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion to dismiss.[1] (ECF No. 11.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 12.) Sutton filed a response in opposition. (ECF No. 16.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion should be granted.

**BACKGROUND**

The following undisputed facts are relevant to the resolution of this motion. (See generally Pet., ECF No. 1-1; Melick Decl., ECF No. 11-1.) Sutton was arrested on November 3, 2003 by the

---

[1] The respondent's motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). However, the respondent concedes that the court has jurisdiction over this matter. Further, the respondent presents matters outside the pleadings in support of her motion under Rule 12(b)(6); therefore, the court is treating the respondent's motion as one for summary judgment pursuant to Rule 56. See Fed. R. Civ. P. 12(d).

South Carolina state authorities for assault and battery of a high and aggravated nature and for assault and battery with intent to kill. On January 20, 2004, the state court sentenced Sutton to five years' imprisonment, suspended pending two years' probation. Later the state court revoked Sutton's probation and imposed a one-year sentence with custody credit on that term from November 3, 2003 through January 20, 2004.

Sutton was again arrested on December 30, 2004 by the South Carolina state authorities for driving under the influence. Sutton was released on bond the next day and was later found not guilty of this charge. Sutton was then arrested on April 29, 2005 by the South Carolina state authorities for traffic violations. He was released on bond that day and the charges were later *nolle prossed*.

An indictment was filed in the United States District Court for the District of South Carolina on August 24, 2005 charging Sutton with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(I), 924(a)(2), and 924(e). Sutton was arrested on March 13, 2006 on this charge. On July 20, 2006, the United States District Court for the District of South Carolina sentenced Sutton to 185 months' imprisonment. Thereafter, Sutton remained in federal custody and arrived at FCI-Williamsburg on September 11, 2006.

BOP calculated Sutton's federal sentence as commencing on July 20, 2006—the day it was imposed—and credited him with a total of 132 days for time served from and including December 30, 2004 through December 31, 2004; April 29, 2005; and March 13, 2006 through July 19, 2006. BOP determined that this prior custody credit accounts for the time that Sutton spent in custody that was not credited towards another term of incarceration. BOP also anticipated that Sutton would potentially be able to earn 725 days of good conduct time that would be credited towards his sentence. With those calculations, Sutton's anticipated release date with credit for anticipated good conduct time was August 15, 2019.

Sutton contends in his Petition that his sentence is not computed correctly, apparently alleging that his commencement date is incorrect, that he has not been given sufficient prior custody credit, and that his anticipated release date is improperly calculated.

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex

Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**C.     Habeas Corpus Generally**

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of his custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Moreover, a petition for habeas corpus under § 2241 is the proper method to challenge the computation or execution of a federal sentence. See United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (citing In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (*en banc*)); United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989).

**D.     Sentence Calculation Claim**

The BOP has the authority to execute sentences and compute jail time, which includes computing pre-sentence credits and determining the sentence termination date. United States v. Wilson, 503 U.S. 329, 333-35 (1992); 28 C.F.R. § 0.96. According to 18 U.S.C. § 3585(a), "a sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." Credit for prior custody is specifically addressed by 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
> (1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

Further, 18 U.S.C. § 3624(b)(1) addresses credit for good conduct time towards a sentence and provides in relevant part:

> [A] prisoner who is serving a term of imprisonment of more than 1 year[,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

As stated above, Sutton was sentenced to 185 months' imprisonment on July 20, 2006 in the United States District Court for the District of South Carolina. In his Petition and in response to the respondent's motion, Sutton contends that BOP has incorrectly calculated his projected release date. However, Sutton does not explicitly state in either document what he believes his projected release date should be; rather, he merely argues that it is incorrect. Specifically, Sutton argues that BOP has failed to properly credit his prior custody credit when determining his projected release date. However, Sutton does not appear to dispute the amount of prior custody credit; rather, his dispute appears to be with the method BOP employed in deducting it from his release date. Further, Sutton argues that BOP erred in calculating the date when he began to earn good conduct time credit. It appears that Sutton is arguing that BOP began crediting him with good conduct time too early (beginning in March 2006 instead of July 2006).[2]

---

[2] If this is in fact Sutton's contention, the court observes that it would apparently result in less good conduct time credit for Sutton, which would extend his projected release date.

In calculating Sutton's sentence, BOP determined that Sutton's effective date of release was December 19, 2021. This date was reached by taking the date the sentence was imposed (July 20, 2006), adding fifteen years five months to it, and subtracting one day from the total. (Melick Decl. ¶ 8, ECF No. 11-1 at 2.) BOP determined that Sutton was entitled to 132 days of prior custody credit and was potentially able to earn 725 days of good conduct time credit. The 725 days was based on providing Sutton with good conduct time beginning on March 10, 2006 at the rate of 54 days per year, with 23 days being earned in his final partial year. (See ECF No. 1-2 at 3.) BOP then converted Sutton's full term date to a Julian date[3] which resulted in 30304. (Melick Decl. ¶ 12, ECF No. 11-1 at 3.) From this number BOP subtracted Sutton's prior custody credit and his potential good conduct time credit, resulting in the following computation:

```
Full term date              30304
- prior custody credit      - 132 days
- possible good time        - 725 days
Anticipated release date    29447
```

(Id. ¶ 13.) This Julian date corresponds to August 15, 2019. (Id. ¶ 14.) Dennis Melick, upon auditing Sutton's sentence computation, declared that Sutton's sentence is properly computed. (Id. ¶ 15.) Further, in response to Sutton's administrative requests, BOP has indicated that these calculations were in accordance with federal statute and Program Statement 5880.28 of the Sentence Computation Manual.

Upon review of the filings in this matter, the court finds that BOP has demonstrated that it properly calculated Sutton's sentence, including his commencement date, his prior custody credit, and his anticipated release date. Sutton has failed to show any error by BOP. Thus, based on all of the foregoing and contrary to Sutton's belief, he cannot demonstrate that BOP has incorrectly

---

[3] The conversion of a date to a unique ordinal number is commonly referred to as a "Julian date." (Melick Decl. ¶ 12, ECF No 11-1 at 3.)

calculated his projected release date. Accordingly, Sutton has not established that he is entitled to habeas relief on this basis.

## RECOMMENDATION

Based on the foregoing, the court recommends that the respondent's motion (ECF No. 11) be granted and that Sutton's Petition be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 10, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).